IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID WILKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-cv-0265-MJR-SCW |
| | ) |
| JAMES FENOGLIO, | ) |
| SHERRY BENTON, and | ) |
| ROBERT HURFORD, JR., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

REAGAN, District Judge:

## A.   INTRODUCTION

On April 4, 2011, David Wilkerson -- an inmate in the Illinois Department of Corrections (IDOC) who was then confined in Pinckneyville Correctional Center, within this Judicial District -- filed suit in this Court pursuant to 42 U.S.C. 1983.  The complaint alleged that five Defendants had violated Wilkerson's rights under the Eighth Amendment to the United States Constitution.   Threshold review of the complaint via 28 U.S.C. 1915A resulted in the dismissal of two Defendants.  Three Defendants remain in the suit at this time, one of whom (Robert Hurford, Jr.) seeks summary judgment.

Hurford's October 11, 2012 motion for summary judgment ripened with the filing of a response by Plaintiff Wilkerson (Docs. 69, 70).  On December 27, 2012, the Honorable Stephen C. Williams, Magistrate Judge, submitted to the undersigned District Judge a Report (Doc. 84) recommending that Hurford's motion be granted.

Plaintiff Wilkerson timely filed objections to Judge Williams' Report and Recommendations on January 2, 2013 (Doc. 86). The deadline to respond to Plaintiff's objections has elapsed. *See* Local Rule 73.1(a). No response to the objections was filed.

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Plaintiff Wilkerson specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); SOUTHERN DIST. OF ILLINOIS LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* For the reasons stated below, the Court adopts Judge Williams' Report and the recommendations contained therein. Analysis begins with reference to the applicable legal standards.

    B.    <u>ANALYSIS</u>

        ►    <u>Standard Governing Summary Judgment</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(a).** Rule 56(c) provides that in asserting that a fact cannot be genuinely disputed, the summary judgment movant must support his assertion by citing depositions, documents, affidavits, declarations, admissions, or other materials in the record.

In assessing a summary judgment motion, the district court must construe all facts in the light most favorable to, and draw all legitimate inferences in favor of, the

nonmovant. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011); *Spivey v. Adaptive Marketing, LLC,* 622 F.3d 816, 822 (7th Cir. 2010); *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Once the movant challenges the factual support and legal soundness of the plaintiff's claim, the plaintiff acquires the burden of demonstrating that a genuine fact issue remains for trial. *Marcatante v. City of Chicago,* 657 F.3d 433, 440, *citing Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 787 (7th Cir. 2007). *See also Reget*, 595 F.3d at 695.

A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 547, *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, to survive summary judgment, the plaintiff must produce admissible evidence on which a jury could find in his favor. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

► Summary of Key Facts and Allegations

Construing the facts and reasonable inferences in the light most favorable to Plaintiff, the Court submits this overview. The Court focuses on the facts relevant to Plaintiff's objections to the Report and his claim that Defendant Hurford was deliberately indifferent to his (Plaintiff Wilkerson's) serious medical needs.

David Wilkerson entered IDOC custody as a paralyzed, paraplegic individual – the result of a gunshot wound to the spine. While he was incarcerated at Lawrence Correctional Center, Wilkerson saw a private board-certified orthopedic spine surgeon -- Dr. Robert Hurford. Hurford was employed at Carle Physician Group.

Following his initial consultation with Wilkerson, Hurford performed a spinal surgery on Wilkerson on June 26, 2008. During the course of that surgery, Hurford debrided abscesses along Wilkerson's spine and placed implants in Wilkerson's back.[1] Wilkerson saw Hurford for a post-surgical follow-up appointment on August 12, 2008, the notes from which reflect that a prescribed painkiller (Tramadol) was giving Wilkerson relief. Another follow-up appointment was scheduled for November 2008.

In October 2008, Wilkerson fell in the shower at Lawrence Correctional Center. He reported the fall to Dr. Hurford during the November 18, 2008 appointment and also reported that he had experienced back and abdominal pain after the fall. Dr. Hurford's notes from that November appointment reflect his conclusions that the hardware in Wilkerson's back had failed and that additional reconstructive spinal surgery might be needed, although there was no need to immediately hospitalize Wilkerson, as he "was not at risk to develop any additional problems," the surgery would be complicated, and his spine possibly "could fuse without the need for additional reconstructive surgery" (Doc. 69-2, pp. 4-5).

In December 2008, Wilkerson was taken to Lawrence County Memorial Hospital for an MRI. Several weeks later (in January 2009), Wilkerson had a CT scan at that hospital. Copies of those scans were mailed to Dr. Hurford in February 2009. Hurford promptly called Dr. James Fenoglio (Wilkerson's physician at Lawrence Correctional

---

[1] Dr. Hurford's medical records explain that Mr. Wilkerson had discitis at L4-L5, osteomyelitis, multiple associated abscesses, and dislocation of his spine at L4-L5; the records identify the June 26, 2008 operative procedure as: "1. L4-L5 anterior debridement and placement of intervertebral device. 2. L4-L5 posterior arthrodesis with placement of segmental instrumentation from L3-L5 and use of local spine autograft and BMP" (Doc. 69-2, pp. 11-12).

Center) and recommended that surgery be done to extend the fusion to the sacrum and pelvis. In March 2009, at the request of the patient manager at Lawrence Correctional Center, Dr. Hurford faxed his recommendation regarding surgery for Wilkerson (which was based on his opinion that Wilkerson's fixation hardware had failed).

On April 8, 2009, prison officials at Lawrence Correctional Center approved the follow-up surgery for Wilkerson. Surgery did not take place until May 27, 2009. Hurford's notes from the surgery are part of the record before the Court and indicate as follows (Doc. 69-2, p. 24; emphasis added):

> Patient's previous posterior midline longitudinal incision was used. Skin was incised sharply. Electrocautery was then used. His fusion mass was exposed from L2-S1. The patient had a solid fusion mass from L2-S1. On the left side, his L3 and L4 screws were seen, set screws were removed and then the rod was removed. With upward traction on the L4 screws, there was no motion from L4-S1. Additional [sic], while using a sharp towel clip and pulling on the fusion mass, there was no motion from L4-S1. The screws at L3 and L4 were removed only on the left side. The right-sided screws and left L5 screw was buried in the fusion mass. **I decided not to take down the fusion mass to remove these screws since the patient was solidly fused.** The spinous process of L5 was removed. The remaining spinous process of L4 and spinous process of S1 were removed to provide a more smoother [sic] contour over the fusion mass. AP and lateral C-arm images were obtained. **Because the patient was solidly fused, I judged that he did not need any additional surgery**.

Dr. Hurford provided a sworn affidavit (Doc. 69-2) fleshing out the dates and details of the events summarized above, including the fact the May 27, 2009 procedure (exploration of the spine fusion and removal of posterior segmental spinal instrumentation) culminated in the conclusion that Plaintiff did not require additional reconstructive surgery. The affidavit explains that the pre-operative radiological films did not reveal that Wilkerson was solidly fused, and that discovery during the May 27,

2009 procedure allowed Wilkerson to *avoid* a lengthy and complicated surgery to extend hardware to the sacrum and insert iliac screws and hooks (*see* Doc. 69-2, p. 7).

Wilkerson was discharged from Carle Foundation Hospital two days after that procedure -- on May 29, 2009. Hurford did not provide further medical care or treatment to Wilkerson after that. All medical care and treatment Hurford furnished to Wilkerson occurred at Carle Foundation Hospital, not at Lawrence Correctional Center.

► <u>Application of Caselaw</u>

Magistrate Judge Williams' Report recommends that the undersigned District Judge grant summary judgment in favor of Dr. Hurford and dismiss Hurford from this suit, based on the fact that Hurford was not deliberately indifferent to Wilkerson's medical needs, as required to impose liability under § 1983. In his objections, Plaintiff Wilkerson stresses (Doc. 86, pp. 2-4, 8-9) that -- on summary judgment -- the Court must view the "evidence submitted by both sides in the light most favorable to the party opposing the motion" (here, him), that his health conditions constitute serious medical needs, and that enough evidence exists to allow a jury to determine whether the "deprivations and delays" in failing to treat his broken back, failed back implants, infection and serious pain add up to deliberate indifference.

Although Plaintiff articulately presents his position and correctly gleans the general standards which apply to the summary judgment motion before the Court, and although the Court agrees that Plaintiff had an objectively serious medical condition, Plaintiff overlooks a critical point as to Dr. Hurford. Even assuming that Hurford, a private physician who is neither an employee of nor under contract with the IDOC, is a

"state actor" for purposes of § 1983, his actions did not constitute deliberate indifference so as to violate the Eighth Amendment to the United States Constitution.

The Court need not repeat the state actor analysis here. The undersigned's conclusion does not depend on resolution of that question, and Plaintiff's objections do not challenge that portion of the Report. But it bears mention that the record leaves doubt as to whether Dr. Hurford can be considered a state actor (i.e., an individual acting "under color of law") as needed to make his actions attributable to the State of Illinois under 42 U.S.C. 1983. Hurford was not employed by the IDOC or Lawrence Correctional Center. He never examined or treated Wilkerson at Lawrence Correctional Center. He did not provide any medical care to Wilkerson at a state-owned facility of any kind. Hurford had no contract with Lawrence or the IDOC. Nor did the physicians' group with whom he worked. *See, e.g., West v. Atkins,* **487 U.S. 42, 51 (1988);** *Rice ex rel. Rice v. Correctional Medical Services,* **675 F.3d 650, 671 (7th Cir. 2012).**

However, the Court does not need to, and does not, reach this issue. Even assuming, for the sake of argument, that Dr. Hurford *did* act under color of state law, his actions did not violate the Eighth Amendment.

In *Roe v. Elyea,* **631 F.3d 843, 856-58 (7th Cir. 2011),** the United States Court of Appeals for the Seventh Circuit reiterated that deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution. *Id., quoting Rodriguez v. Plymouth Ambulance Serv.,* **577 F.3d 816, 828 (7th Cir. 2009).** "A successful deliberate indifference claim is

comprised of both an objective and a subjective element." *Roe*, **631 F.3d at 857,** *citing Farmer v. Brennan,* **511 U.S. 825, 834 (1994).** To prevail on a deliberate indifference claim the plaintiff must show that (objectively) the deprivation he suffered was sufficiently serious and that (subjectively) the defendant acted with a sufficiently culpable state of mind to support § 1983 liability. *See Greeno v. Daley,* **414 F.3d 645, 653 (7th Cir. 2005).**

In the case at bar, it cannot be disputed that Wilkerson had an objectively serious medical condition. However, the record does *not* establish that Dr. Hurford (subjectively) acted with deliberate indifference to that medical condition. A plaintiff must show that the defendant knew of *and disregarded* an excessive risk to his health. *Greeno*, **414 F.3d at 653.**

The Seventh Circuit has emphasized that medical professionals are entitled to deference in their treatment decisions:

> "unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir. 2008).... "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* .... The burden is high on a plaintiff making such a claim: "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008).

*Roe*, **631 F.3d at 856-58.** *Accord Chambers v. Mitchell,* **-- F.3d --, 2013 WL 57915, *3 (7th Cir. Jan. 7, 2013)(unpublished).**

8

As the Court explained regarding the subjective element of the deliberate indifference test in *King v. Kramer*, **680 F.3d 1013, 1018 (7th Cir. 2012),** to defeat summary judgment, a § 1983 plaintiff must demonstrate a genuine issue of fact on the question whether the defendants were aware of *and deliberately indifferent to* his serious medical need.  "Negligence – even gross negligence – is insufficient to meet this standard…. The standard is comparable to that required for criminal recklessness." *Id.*

Here, viewing the evidence in the light most favorable to Plaintiff Wilkerson, the Court cannot conclude that the *subjective* prong of the deliberate indifference test has been satisfied as to Defendant Hurford.  Nothing in Hurford's course of treatment falls outside the bounds of professional judgment/practice/standards or lands "so far afield from an appropriate medical response" as to be considered deliberate indifference. *King,* **680 F.3d at 1019.**  Wilkerson disagrees with Hurford's assessment and treatment of Wilkerson's back injuries.  The records before the Court (including Hurford's affidavit) reveal that Hurford saw Wilkerson four times, that he appropriately acted on each of these instances (and when making recommendations about Wilkerson to physicians at Lawrence Correctional Center), and the delays about which Wilkerson most vociferously complains cannot be attributed to *Hurford*.

As Magistrate Judge Williams properly pointed out in his Report (Doc. 84, p. 10): "Hurford's ability to treat Wilkerson as speedily as Wilkerson wanted may have been affected by Wilkerson's incarceration, but Hurford was not in charge of the pace of treatment, and this treatment of Wilkerson's spine is a far cry from the 'unnecessary and wanton infliction of pain' required for an Eighth Amendment violation."

Simply put, there is no evidence of constitutionally deficient treatment by Hurford. He responded promptly to requests from officials at Lawrence Correctional Center. He offered recommendations and furnished treatment to address Wilkerson's condition, and none of Hurford's actions constitute deliberate indifference to Wilkerson's serious medical needs.

C. CONCLUSION

As to Plaintiff's claims against Defendant Hurford, no genuine issues of material fact remain, and Hurford is entitled to judgment as a matter of law. Accordingly, the Court **ADOPTS** Magistrate Judge Williams' Report (Doc. 84) in its entirety and **GRANTS** Defendant Hurford's motion for summary judgment (Doc. 69). Defendant Hurford is dismissed from this case with prejudice. At the close of the case, the Clerk of Court shall enter judgment in favor of Defendant Hurford and against Plaintiff Wilkerson.

What remains herein are Plaintiff Wilkerson's deliberate indifference claims against Defendants Fenoglio and Benton. Judge Williams will rule on Plaintiff's motions to appoint counsel (contained within the Objections at Doc. 86, and presented separately at Doc. 91). Trial is set to commence at 9:00 am on October 7, 2013.

IT IS SO ORDERED.

DATED January 29, 2013.

s/Michael J. Reagan
Michael J. Reagan
United States District Judge