IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID WILKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11−cv−0265−MJR−SCW |
| | ) |
| JAMES FENOGLIO, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

David Wilkerson (Plaintiff) filed suit in this Court in April 2011, alleging that various correctional officials and medical professionals were deliberately indifferent to his serious medical needs after he (paralyzed and confined to a wheelchair) was injured in the shower of the medical unit of Lawrence Correctional Center. Several Orders entered herein resulted in the dismissal of certain claims and Defendants, leaving only James Fenoglio, MD. Now before the Court is the motion for summary judgment filed by Defendant Fenoglio on April 26, 2013 (Doc. 103). Plaintiff filed a response to the motion on June 24, 2013 (Doc. 115), and Fenoglio filed a reply on July 8, 2013 (Doc. 121). For the reasons below, the Court will grant Fenoglio's motion.

  A.  **PROCEDURAL BACKGROUND AND SUMMARY OF KEY FACTS/ALLEGATIONS**

Pursuant to 42 U.S.C. § 1983, David Wilkerson, then an inmate at Lawrence Correctional Center, sued five Defendants on the theory they violated his Eighth Amendment rights by showing deliberate indifference to his medical needs after he fell off a shower chair and re-injured his back. Defendants Ryker and Walker were dismissed pursuant to the Court's threshold review Order under 28 U.S.C. 1915A (Doc. 17). Defendant Hurford was dismissed from this case on January 29, 2013

(Doc. 94). Defendant Benton was dismissed via a July 15, 2013 Order (Doc. 125), leaving Fenoglio as the remaining Defendant.

Plaintiff has been a paraplegic since 1982, prior to his time in custody. In the summer of 2008, Defendant Hurford performed spinal surgery on Plaintiff and implanted hardware into his back (Pl.'s Affidavit, Doc. 69-2, p. 2). On October 16 2008, Plaintiff fell while trying to move himself from his wheelchair to the shower chair (Doc. 1). Plaintiff was housed in the infirmary throughout the relevant time period, because he had some open sores (Pl's Dep., Doc. 106-1, p. 24). After the fall, Plaintiff was helped back to his bed and examined by Nurse Clevy (Pl's Dep., Doc. 106-1 pp. 21-22). Dr. Fenoglio also examined Plaintiff on October 16, 2008 and determined that he had some bruising (Pl's Dep., Doc. 106-1 pp. 21-22). Plaintiff continued to receive regular examinations by the nurses and by Dr. Fenoglio (Pl's Dep., Doc. 106-1 pp. 25-26). Fenoglio performed an examination on October 22, 2008, noted Plaintiff's complaints of low back pain, and examined Plaintiff's back (Doc. 106-2, p. 4; Fenoglio Aff., C, ¶7).

Plaintiff was taken the Carle Institute to follow up with Dr. Hurford on November 18, 2008 (Hurford Aff., Doc. 69-2, ¶ 10). Hurford recommended more testing and concluded that Plaintiff was a candidate for additional surgery, because the implanted hardware had failed, although no explanation for the failure was recorded (Hurford Aff., Doc. 69-2, ¶ 10). Hurford attested in a sworn affidavit that Plaintiff's need for surgery was neither urgent nor emergent and that significant pre-surgery testing would have to be accomplished first due to the inherent risks in the procedures (Hurford Aff., Doc. 69-2, ¶ 12 &13).

Dr. Fenoglio examined Plaintiff when he returned to Lawrence on November 19, 2008 (Doc. 106-2, p. 5; Fenoglio Aff. ¶ 10). Fenoglio reviewed Hurford's recommendations and indicated that he would refer Plaintiff for the tests (Doc. 106-2, p. 5-6; Fenoglio Aff. ¶ 10).

Fenoglio also saw Plaintiff the next day; Plaintiff was complaining of pain, and Fenoglio prescribed Darvocet (Doc. 106-2 p. 5; Fenoglio Aff. ¶ 11). Fenoglio performed follow-up examinations on November 24, 2008 and December 1, 2008 (Doc. 106-2, p. 7-8; Fenoglio Aff. ¶ 13). Plaintiff had a serious of lumbar spine radiographs or plain films taken on December 6, 2012 (Doc. 106-2, p. 8; Fenoglio Aff. ¶ 14).

Fenoglio again examined Plaintiff on December 10, 2008. Fenoglio's notes from that visit indicate that he would check with "Andrea" regarding Plaintiff's referral for surgery (Doc. 106-2, p.9; Fenoglio Aff. ¶ 16). On that same day, Fenoglio contacted Andrea Huey, the Medical Records Director, and he scheduled an MRI for December 17, 2008, which Plaintiff received (Doc. 106-2, p.9; Fenoglio Aff. ¶¶ 16, 18).

Fenoglio examined Plaintiff on December 19, 2008, noting that lumbar spine films were needed for comparison with the MRI (Doc. 106-2, p. 11; Fenoglio Aff. ¶ 19). Fenoglio next saw Plaintiff on December 22, 2008, and indicated that the comparison films would be performed that day (Doc. 106-2, p.12; Fenoglio Aff. ¶ 20). On December 29, 2008, Fenoglio saw Plaintiff and noted that he was awaiting a surgery referral decision (Doc. 106-2, p.13; Fenoglio Aff. ¶ 21). In response to Plaintiff's consistent complaints of pain, Fenoglio prescribed Vicodin on December 30, 2009 (Doc. 106-2, p.14; Fenoglio Aff. ¶ 22).

Fenoglio performed another examination of Plaintiff on January 6, 2009, which contained a note to ask Huey to follow up with Carle clinic (Doc. 106-2, p.15; Fenoglio Aff. ¶ 23). On January 16, 2009, Fenoglio examined Plaintiff, and Plaintiff received a CT scan (Doc. 106-2, pp. 2, 16; Fenoglio Aff. ¶¶ 24, 25). Fenoglio also performed exams on Plaintiff on January 23, January 30, and February 4 of 2009 (Doc. 106-2, pp., 17-19; Fenoglio Aff. ¶¶ 26-28).

Huey called Carle clinic on February 5, 2009 to see if Hurford had reviewed the films and made a determination, but received no answer (Doc. 106-2, p. 20; Fenoglio Aff. ¶ 29). The prison

heard back from Carle clinic on February 24, 2009. Hurford orally recommended surgery and indicated that he would send his written recommendation in the mail (Doc. 106-2, p. 21; Fenoglio Aff. ¶ 30). Lawrence Correctional Center did not receive Hurford's written recommendation until sometime between March 26, 2009 and April 2, 2009, which is when Dr. Shepard noted that Plaintiff had been referred back to Carle clinic for exploratory surgery (Doc. 106-2, pp., 22-24; Fenoglio Aff. ¶¶ 32-33). Huey called Carle Clinic on April 10, 2009 for a date for surgery. Huey received a date on April 13, 2009 (Doc. 106-2, pp. 25-26; Fenoglio Aff. ¶¶ 34, 35).

Surgery was initially scheduled for May 6, 2009. The Carle Clinic rescheduled it for May 27, 2009 (Doc. 106-2, pp., 26, 30; Fenoglio Aff. ¶¶ 35, 39). During this time, Fenoglio saw Plaintiff -- on March 4, 2009, April 17, 2009, April 22, 2009, and May 6, 2009 (Doc. 106-2, pp. 22, 24, 27-28; Fenoglio Aff. ¶¶ 31, 33, 36-37). Fenoglio prescribed Vicodin for Plaintiff's pain on the May 6, 2009 examination. Dr. Hurford performed a second surgery in May of 2009, during which he noted that some of Plaintiff's hardware had been displaced, but Plaintiff's spine had fused on its own and no further surgery was necessary (Doc. 69-2, p. 23-28).

Plaintiff alleges that Fenoglio failed to provide adequate, prompt medical treatment, violating Plaintiff's rights under the Eighth Amendment to the United States Constitution by this deliberate indifference to Plaintiff's medical needs. Fenoglio moved for summary judgment on April 26, 2013, asserting that Plaintiff cannot prove deliberate indifference, and Fenoglio is otherwise immune from suit.

### B.   ANALYSIS OF FENOGLIO'S SUMMARY JUDGMENT MOTION

#### (1)   Summary Judgment Standard

Summary judgment, which is governed by FEDERAL RULE OF PROCEDURE 56, is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut*

*Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).[1]  The party seeking summary judgment bears the initial burden of demonstrating based on the pleadings, affidavits and/or information obtained via discovery the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.  If a party fails to properly address another party's assertion of fact, courts may "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it."  FED. R. CIV. P. 56(e).

A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion.  *Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001).  *See also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events") (internal quotation marks omitted).  There is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party."  *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010); *accord Anderson*, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but only to determine whether a genuine issue of triable fact exists.  *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

---

[1]    Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard.  *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011).

Page | 5

**(2)     Deliberate Indifference Standard**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005), *quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) **(internal quotation marks omitted).  *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.")**. A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care.  *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).**

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test.  *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011),** *citing Johnson v. Snyder*, **444 F.3d 579, 584 (7th Cir. 2006).**  The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need.  *Arnett*, **658 F.3d at 750.  *Accord Greeno*, 414 F.3d at 653.**  A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.  *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).  *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added).**  Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable.  *Greeno*, **414 F.3d at 652–53.**

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health.  *Greeno*, **414 F.3d at 653.**  The plaintiff need not show the physician literally ignored his complaint, just that the

Page | 6

physician was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Courts give deference to physicians' treatment decisions, since "there is not one proper way to practice medicine, but rather a range of acceptable courses." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). A doctor who chooses one routine medical procedure over another does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). See also *Estelle*, 429 U.S. at 107 (whether additional diagnostic techniques or treatments were needed was a "classic example of a matter for medical judgment.").

As mentioned above, a prisoner is entitled only to reasonable measures to meet a substantial risk of serious harm — not to receive the best care possible. *Forbes*, 112 F.3d at 267. Neither negligent diagnosis nor negligent treatment is an Eighth Amendment violation: "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 104. Nor is the Eighth Amendment violated simply because an inmate is dissatisfied with his doctor's course of treatment. See *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment."). Deliberate indifference may be inferred from a doctor's treatment decision only when that decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [he] did not base the decision on such a judgment." *Gayton*, 593 at 622–23.

Applying these principles here, the Court concludes that Fenoglio is entitled to summary judgment. The Order dismissing Dr. Hurford found that Plaintiff's spinal injury was an objectively serious medical condition. The Court will not disturb that finding here. However, Plaintiff's theory of the case is that he suffered an acute injury at the time of his fall that required *immediate* surgery.

Page | 7

The medical records properly before the Court simply do not support that theory; nor do the facts and reasonable inferences construed in the light most favorable to Plaintiff.

Plaintiff's initial surgery (prior to the events in question here) was intended to address discitis osteomyelitis, an infectious process involving the spine that can cause destructive changes and instability (Doc. 69-2, p. 2). Dr. Hurford testified via affidavit that a procedure to fuse the sacrum using iliac screws was considered at the time of the initial surgery in June of 2008, but that he elected for a more conservative course of treatment due to the poor condition of Plaintiff's skin and the significant blood loss he experienced during the surgery (Doc. 69-2, p. 3). When that course of treatment was found to have failed in November of 2008, Hurford recommended the more complicated surgery, which was scheduled for May 27, 2009 (Doc. 69-2, p. 4).

Nowhere do the medical records state, conclude, or suggest that the fall itself caused the hardware to break. Nowhere do the medical records indicate that Plaintiff's condition indicated a need for a back brace or other exterior stabilization. In fact, Hurford's notes on the May 27, 2009 surgery indicated that Plaintiff's back had fused on its own, and the surgery Hurford planned to perform that day was no longer necessary. Hurford also indicated in his affidavit that when he examined Plaintiff, the need for surgery was neither urgent nor emergent.

The only evidence offered in support of Plaintiff's contention that he needed surgery immediately after the fall is his own testimony to that effect, although as Plaintiff repeatedly reminds the Court, he is a layperson with a ninth grade education, not a medical professional. Plaintiff's insistence that he needed surgery sooner than he received it appears to be a preference of the Plaintiff, which is not entitled to protection under the Eighth Amendment. Plaintiff has not shown that the delay of which he complains was medically negligent, much less that it rose to the level of deliberate indifference.

Additionally, there is significant evidence in the record that Fenoglio was not deliberately indifferent. Fenoglio performed an examination on the same day of the fall and one week later. He concluded that Plaintiff had suffered a bruised back. Plaintiff has not submitted any evidence that this conclusion was so out of bounds as to "shock the conscience." Furthermore, the record reveals that Fenoglio took Plaintiff's complaints of pain seriously. Fenoglio frequently prescribed narcotic pain medication, including Vicodin and Darvocet. He arranged for Plaintiff to get the tests necessary to determine if Plaintiff was a candidate for surgery, and he completed testing on January 16, 2009. He instructed his staff to frequently follow up with the Carle clinic to determine the status of Plaintiff's surgery.

During this time, Fenoglio housed Plaintiff in the infirmary and examined him regularly. The nursing staff also examined Plaintiff regularly. The records show that Fenoglio undertook to manage Plaintiff's pain and to get him scheduled for further reconstructive surgery. Although it is possible that Plaintiff may have been scheduled for surgery sooner, the evidence suggests that the delay, if anything, caused Plaintiff's back to stabilize without the need for a complicated and risky procedure. This is not deliberate indifference, and Fenoglio is entitled to summary judgment.

**(3)    ADA and Unconstitutional Condition of Confinement Claims**

Plaintiff does not substantially rebut Fenoglio's conclusions about the timeline of events or submit contrary facts/evidence. Rather, Plaintiff argues in response to the summary judgment motion that he is actually making a claim for unconstitutional conditions of confinement and violations of the Americans with Disabilities Act, 42 U.S.C. 12111, *et seq.* (ADA)**,** based on inadequate access to showers (Doc. 115). A plaintiff cannot amend his complaint via arguments in a response brief to a motion for summary judgment. **Shanahan v. City of Chicago**, **82 F.3d 776, 781 (7th Cir. 1996).** The Court rejects Plaintiff's newly presented (eleventh-hour) claims.

To the extent that Plaintiff is arguing that he has always been making an ADA claim and/or a unconstitutional condition of confinement claim, the Court rejects this conclusion as well. This case was subject to review under 1915A, which permits the court to "identify cognizable claims." **28 U.S.C. § 1983.** In its January 2012 threshold review, the undersigned Judge identified three claims: 1) Deliberate indifference to serious medical needs; 2) medical malpractice; and 3) access to the law library (Doc. 17). Plaintiff never objected, sought reconsideration, or otherwise attempted to amend his complaint to state ADA claims or unconstitutional condition of confinement claims. Additionally, at Plaintiff's deposition, he testified that he had brought cases based on unconstitutional conditions of confinement in the past, suggesting that he is familiar with how to bring those claims, had he intended to do so.

While Plaintiff described the shower chair in his complaint as "inadequate" and specifically alleges that he was forced to move in and out of his wheelchair without assistance, the gravamen of his allegations against Fenoglio are that Fenoglio failed to treat Plaintiff's "broken" back medically. Plaintiff never uses the term "conditions of confinement" in the section alleging deliberate indifference against Fenoglio, despite having brought those claims in the past. Therefore, the Court finds that the Complaint does not already contain an ADA claim or a claim for unconstitutional condition of confinement in regards to Defendant Fenoglio. Because the Court finds those claims are not present in this case, the Court does not address Plaintiff's legal arguments on those points.

### C. CONCLUSION

No genuine issues of material fact remain, and Defendant Fenoglio is entitled to judgment as a matter of law. For all the foregoing reasons, the Court **GRANTS** Defendant Fenoglio's summary judgment motion (Doc. 105).

The Clerk of the Court **SHALL ENTER JUDGMENT** in favor of Defendant Fenoglio and against Plaintiff. Additionally, as this Order disposes of all remaining claims herein, the Clerk of Court (after judgment has been entered) shall close the case.

IT IS SO ORDERED.

DATED  July 25, 2013

s/ *Michael J. Reagan*
MICHAEL J. REAGAN
United States District Judge
